UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **WILLIAM T. MORRISON, JR.**, <br><br> Plaintiff, <br><br> v. <br><br> **FEDERAL BUREAU OF PRISONS**, <br><br> Defendant. | Case No. 19-cv-1838 (CRC) |

### MEMORANDUM OPINION

Federal inmate William T. Morrison, Jr., proceeding *pro se*, filed suit alleging that the Federal Bureau of Prisons ("BOP") has mismanaged the treatment of his high cholesterol. He requests a declaratory judgment stating that he is entitled to receive the nutritional supplement Coenzyme Q10 ("CoQ10") as part of his treatment. Although Morrison's Amended Complaint is somewhat unclear, the Court construes his claim as challenging his treatment under the Eighth Amendment of the Constitution. The government has moved to dismiss on the merits and on mootness grounds. Alternatively, it seeks a transfer of venue to the district where Morrison was incarcerated when he filed suit. The Court rejects the government's mootness and venue arguments. But because Morrison has not alleged facts showing that BOP acted with deliberate indifference to his medical needs, the Court will dismiss the case for failure to state an Eighth Amendment violation.

I.  **Background**

Mr. Morrison has been in BOP custody since February 2016. Am. Comp. at ¶9. When he filed this suit in June 2019, he was housed at FCI Elkton in Ohio. Id. at 12. He now resides at FCI El Reno in Oklahoma. See Notice of Change of Address, ECF. Dkt. No. 35. According

to Morrison's December 2019 Amended Complaint——which the Court must accept as true at this stage of the proceedings——he has "a . . . family history of coronary heart disease, [including] high levels of cholesterol," and has been prescribed statin drugs to control his cholesterol levels. See Am. Comp. at ¶¶10, 16. However, he complains that he is "highly intolerant to statin medications," and "suffers from common side effects" including muscle cramps, joint pain, and fatigue. Id. at ¶17. To alleviate these side effects, Morrison states that prison medical staff previously prescribed him CoQ10. Id. at ¶¶19–20. This combination of statins and CoQ10 helped keep his cholesterol in the proper range and lessened the side effects he had previously experienced while on statins alone. Id. at ¶23.

In 2017, Morrison was informed that CoQ10 could no longer be sold at inmate commissaries. Id. at ¶25. Nevertheless, as Morrison was transferred around the federal prison system, BOP approved his requests to maintain access to the supplement. See generally id. at ¶¶30–37. In late 2018, however, Morrison's authorization for CoQ10 expired and the "FBOP Central Office refused to approve" further requests for CoQ10 submitted by prison medical staff on Morrison's behalf. Id. at ¶¶38–40. According to medical records that Morrison attached to his Amended Complaint, BOP denied his requests for CoQ10 because, as a nutritional supplement, it is not FDA approved and it has not otherwise proven effective for the treatment of the types of conditions that Morrison reported to prison medical staff. Am. Comp. Ex. F at 1.[1]

---

[1] While typically restricted to the pleadings when deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court may consider "documents attached as exhibits or incorporated by reference in the complaint." Hinton v. Corr. Corp. of Am., 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (internal quotation marks omitted); see also Marshall v. Honeywell Technology Solutions, Inc., 536 F. Supp. 2d 59, 65 (D.D.C. 2008) ("[W]here a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion [to dismiss] to one for summary judgment.") (internal quotation and citation omitted). Here,

Without the CoQ10, Morrison alleges that the side effects returned and he discontinued taking his statin medication. Id. at ¶41. Morrison attempted to take various statins in 2019 without CoQ10 but again experienced side effects and stopped taking them. See id. at ¶¶43–50.

After filing his initial complaint in this case and due to his reported intolerance to statins, Morrison was prescribed Repatha, an injectable non-statin medication, with approval of BOP's Central Office. Id. at ¶50; Am. Comp. Ex. G at 1. Morrison acknowledges that the Repatha injections lowered his cholesterol to normal levels. Am. Comp. at ¶50. Two months after beginning the treatments, however, Morrison reported to FCI Elkton medical staff that he was experiencing lower back pain, muscle aches, and plantar fasciitis, which he claims are side effects of the Repatha. Id. (citing Am. Comp. Ex. H.) Prison medical staff treated his pain with a steroid and provided him stretching exercises to relieve the reported plantar fasciitis. Am. Comp. Ex. H. at 1. Morrison also claims in the Amended Complaint that he developed "fatigue" and "unexplained nail fungus" as a result of taking Repatha, but there is no indication in the attached medical records (nor does the Amended Complaint allege) that he brought these issues to the attention of prison medical staff. Am. Comp. at ¶50.

Morrison seeks declaratory judgments that BOP "is obligated to provide adequate medical care to [p]laintiff while he is in [its] care, custody, and control," that his "[h]igh levels of blood cholesterol [represent] a serious medical need," and that he has a right to approval of his non-formulary requests for CoQ10 as part of the treatment for his high cholesterol. Id. at 12. The government has moved to dismiss Morrison's suit for lack of subject matter jurisdiction due

---

Morrison has attached eight sets of prison medical records as exhibits to his Amended Complaint, which the Court will consider in deciding the present motion.

3

to mootness and for failure to state a claim. Alternatively, it seeks a transfer of venue to the Southern District of Ohio, where Morrison was housed when he filed suit.

## II. Analysis

Morrison's complaint does not cite a specific cause of action supporting his claim of mistreatment and is somewhat unclear as to the basis for his suit. See Am. Comp. at 1–12. The Court will nonetheless construe his complaint liberally due to his *pro se* status. See, e.g., Sanchez-Mercedes v. Bureau of Prisons, 453 F. Supp. 3d 404, 415–16 (D.D.C. 2020). Because the relief Morrison requests is equitable and makes express reference to his "serious medical need[s]" (a phrase taken from Eighth Amendment caselaw), see Am. Comp. at 12, the Court construes Morrison's complaint as seeking a declaratory judgment vindicating his Eighth Amendment right to be free from cruel and unusual punishment. So read, the Court has subject matter jurisdiction under 28 U.S.C. § 1331 as Morrison's claim "aris[es] under the Constitution." See Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1232 (10th Cir. 2005) (holding, in the context of an Eighth Amendment claim for equitable relief due to denial of medical treatment, that "Section 1331 [] provides jurisdiction for the exercise of the traditional powers of equity in actions arising under" the Eighth Amendment).[2]

### A. Mootness

The government moves to dismiss the action on the grounds that the suit is moot because Morrison is now receiving medication which keeps his cholesterol within normal levels. See Mot. to Dismiss at 5–6. However, while Morrison's initial complaint focused on the treatment of

---

[2] Morrison also correctly notes that the waiver of sovereign immunity in the Administrative Procedure Act, 5 U.S.C. § 702, would apply to such a suit. Simmat, 413 F.3d at 1233; see also Chamber of Commerce v. Reich, 74 F.3d 1322, 1329 (D.C. Cir. 1996) ("The APA's waiver of sovereign immunity applies to any suit whether under the APA or not.").

his high cholesterol, the Amended Complaint does not solely—or even primarily—concern his cholesterol levels. It rather focuses on the side effects he allegedly experiences as a result of his Repatha injections, side effects Morrison says would be absent were he provided access to CoQ10 in combination with statins. See Am. Comp. at ¶¶50–53. The government's arguments regarding Morrison's cholesterol levels are thus misplaced; the relevant harms are the purported Repatha side effects. As discussed below, these side effects may or may not be sufficiently serious to ground an Eighth Amendment claim, see infra II.C, but they are enough to save Morrison's suit from mootness.

    B. Venue

The government also moves to transfer venue to the Southern District of Ohio, arguing that is where "Plaintiff can be found as well as where his medical records and witness may also be found." Mot. to Dismiss at 8. However, Morrison's central allegation is that the denial of his CoQ10 medication was a decision made by the "FBOP Central Office" located in Washington, D.C. See, e.g., id. at ¶29. Further, given that Morrison received treatment at various BOP facilities during the time period covered by the Amended Complaint, see, e.g., id. at ¶42, and has subsequently been relocated from Ohio to Oklahoma, see Notice of Change of Address, ECF. Dkt. No. 35, there is little to be gained in terms of convenience of the parties and witnesses by transferring this matter to Ohio. The Court therefore denies the government's request to transfer venue.

    C. Eighth Amendment Claim

To establish a claim under the Eighth Amendment for denial of adequate medical care while incarcerated, a plaintiff must show that he suffered from a serious medical need and that

prison officials were deliberately indifferent to that need. See Banks v. York, 515 F. Supp. 2d 89, 102 (D.D.C. 2007); see also Estelle v. Gamble, 429 U.S. 97, 103–04 (1976).

As to the first requirement, the D.C. Circuit has given little guidance on what a plaintiff must show to establish that he suffered from a serious medical need. See Woodruff v. United States, No. CV 16-1884 (RDM), 2020 WL 3297233, at *10 (D.D.C. June 18, 2020) (noting "the absence of controlling D.C. Circuit case law [] regarding what it means for a prisoner to have a 'serious medical need'"). Fellow district courts to have confronted the question have found a serious medical need where the prisoner is suffering from an ailment which the general public would easily recognize as demanding medical intervention, or, in some cases, where the ailment has been previously diagnosed and treated by a physician. See, e.g., Chandler v. Stover, 211 F. Supp. 3d 289, 301 (D.D.C. 2016) ("[a] medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention").

Morrison complains of muscle cramps, fatigue, and an unexplained nail fungus due to his Repatha injections. Am. Comp. at ¶50. The Court questions whether these conditions are sufficiently serious to ground an Eighth Amendment claim. See Roberson v. Manasrah, No. 117CV01062DADSAB, 2019 WL 1517721, at *1 (E.D. Cal. Apr. 8, 2019) (dismissing Eighth Amendment claim for failure to show serious medical need where plaintiff "submitted forms complaining of shortness of breath, muscle cramping, chest pain, joint pain, severe headaches, night sweats, and coughing"); but see Merritte v. Arbuckle, No. 16-CV-0959-NJR, 2016 WL 7174663, at *3 (S.D. Ill. Dec. 8, 2016) (Eighth Amendment claim permitted to proceed after plaintiff "experienced muscle cramps, hunger pains, migraines, and lethargy as a result of receiving meal trays with beans" to which he was allergic). The Court need not decide this issue,

6

however, because it concludes that Morrison has failed to allege facts showing that BOP medical personnel acted with deliberate indifference to the purported side effects of the Repatha injections.

Deliberate indifference in violation of the Eighth Amendment must "constitute[] unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993) (citing Estelle, 429 U.S. at 104).  It is "a state of mind more blameworthy than negligence," Farmer v. Brennan, 511 U.S. 825, 835 (1994), and more akin to "criminal recklessness," Barr v. Pearson, 909 F.3d 919, 922 (8th Cir. 2018).  As relevant here, "mere disagreement over the proper treatment" cannot support a finding of deliberate indifference.  Banks, 515 F. Supp 2d at 103 (quoting Chance v. Armstrong, 143 F.3d 698, 703 (2d. Cir. 1998)).

Morrison has not met this demanding standard.  As noted above, the documents attached to Morrison's complaint attest that the prison medical personnel responsible for his care prescribed treatment for the main side effects from Repatha that Morrison reported to them.  See Am. Comp. Ex. H at 1 (prescribing an anti-inflammatory steroid for reported lower-back pain and muscle aches and providing Morrison with stretching exercises to relieve his plantar fasciitis).  Where prison medical officials provide treatment for the medical issue in question, "'[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment'" does not amount to a showing of deliberate indifference on the part of the prison's medical staff.  Barr, 909 F.3d at 921–22 (quoting Meuir v. Greene Cty. Jail Emps., 487 F.3d 1115, 1118–19 (8th Cir. 2007)); see also id. at 922 (finding no deliberate indifference where prison officials "continued to provide medical care" including "providing other medication" to

treat an inmate after side effects caused medical officials to end a course of treatment the plaintiff favored).[3]

Although the focus of Morrison's claim is, as noted above, the side effects he currently experiences from Repatha, he similarly fails to allege facts showing that the BOP's refusal to provide him with CoQ10 was the result of deliberate indifference. The medical records attached to Morrison's complaint indicate that BOP officials refused this request because (1) there was "little published evidence showing benefit of [CoQ10] for the treatment of myopathy"[4] and (2) BOP generally does not approve the use of nutritional supplements, which are not FDA approved. Am. Comp. Ex. F at 1. Moreover, Morrison acknowledges that BOP's administration of Repatha as an alternative to statins and CoQ10 (and which was approved by the Central Office) was effective in lowering his cholesterol to normal levels. Am. Comp. at ¶50. Morrison's disagreements with the medical judgments underlying both the refusal to provide him CoQ10 and the treatment provided for his Repatha-related side effects are thus insufficient to show that BOP officials were deliberately indifferent to his medical needs. See Bryant v. Wright, 451 F. App'x. 12 (2d Cir. 2011) (finding no deliberate indifference where prescription of

---

[3] Although Morrison's Amended Complaint alleges that he also suffers from an unexplained nail fungus, he does not allege—nor do the medical records attached to his complaint show—that prison medical staff were aware of this ailment. See Am. Comp. Ex. H at 1. Absent such awareness, any failure to treat the fungus cannot show deliberate indifference. See Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) ("To show deliberate indifference, [a plaintiff must] allege that [the defendant] had *subjective knowledge* of [a] serious medical need and recklessly disregarded the excessive risk to inmate health or safety from that risk." (emphasis added)). As for Morrison's unspecific complaints of "fatigue," a prison doctor's refusal to "dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue . . . does not violate the Constitution." Cooper v. Casey, 97 F.3d 914, 916 (7th Cir.1996).

[4] "Myopathy" is a general term that encompasses the muscle pain and cramping that Morrison reported to FCI Elkton medical staff per the attached records.

generic medications caused inmate to suffer side effects because choice of medication was a common exercise of judgment and doctors worked to treat the side effects).

Finally, in the rare cases where courts have entertained Eighth Amendment claims arising from the alleged insufficiency of a physician's choice of treatment, they have required plaintiffs to allege facts showing a more culpable mental state than that associated with merely "'fail[ing] to provide the [allegedly] more efficacious treatment.'" See Banks, 515 F. Supp. 2d at 103 (quoting O'Connor v. McArdle, 217 F. App'x. 81, 83 (2d Cir. 2007)); see also id. (noting that cases where plaintiffs successfully maintain a claim for deliberate indifference based on the purported shortcomings of the treatment received require the plaintiffs to allege, e.g., financial motives or other suspect incentives behind the physician's choice of treatment). Morrison's complaint does not in any way suggest that BOP's treatment of his high cholesterol or the Repatha side effects emerged from any such improper motive or culpable mental state. See Am. Comp. at 1–12. He thus cannot maintain a suit for an Eighth Amendment violation based on his dissatisfaction with the course of treatment chosen or approved by BOP personnel.

### III. Conclusion

For the foregoing reasons, the Court will grant [28] Defendant's Motion to Dismiss for failure to state a claim on which relief can be granted. A separate order will follow.

CHRISTOPHER R. COOPER
United States District Judge

Date:  March 30, 2021